Good morning. If it pleases the court, my name is John Scott. I am the attorney for the plaintiff and the appellant, Derwin Longmire. There certainly are a lot of legal issues here, as well as some factual issues that perhaps I would like to emphasize. And for one of the — this is over the 40th time I've argued in this court. I think it's the first time I'm lost for words on where to begin. So I'll start at the beginning with the — If you want a suggestion for where to start, why don't you talk about the relationship between this action and the State proceeding. Thank you. The State proceeding occurred simply because the district court determined that a perceived-as discrimination claim was not actionable under the Equal Protection Clause. Therefore, once that ruling was made and my client was in the statute of limitations to bring a perceived-as discrimination claim in State court under the Fair Employment and Housing Act, we filed a perceived-as claim under the Fair Employment and Housing Act because there was no collateral estoppel or res judicata because the issue hadn't been decided on its merits. Judge White simply decided the Constitution does not allow for a perceived-as discrimination claim. So then you went to State court and you brought a separate State lawsuit for perceived-as discrimination. Only that issue, yes. Now summary judgment's been granted. Yes. So the State trial judge made factual findings that there are no material issues of fact to support that claim. And that's on appeal. And that's the matter that's pending. Now, if the California Court of Appeal rules against you, then would issue preclusion apply at that point, and you're going to give up on the Federal lawsuit? Or how do you plan to proceed? Well, Your Honor, I would agree that as to the issue of the merits, it would likely be res judicata or collateral estoppel when we get to the merits. But that's not the issue that's raised in this appeal. There's a question of the merits. No, I understand that. I'm actually just approaching it from a traditional economy and efficiency standpoint here. You've got a legal issue presented before this Court that I agree is different. But given that the State court has ruled against you on the merits, if that were to be affirmed, what does that do to the Federal action, and how should this Court proceed given the procedural posture of that issue? Well, my position, Your Honor, is that there's an important legal issue here this Court can address if it wants to. If the Court chooses to punt and not to address it, obviously, the Court can do whatever it wants. I am suggesting and requesting that the Court address what I believe is a very important legal issue that the Court has jurisdiction over, and that is, in terms of a motion to dismiss, before we even get to the merits, can a person with a perceived-as discrimination claim be brought under the Equal Protection Clause? You do have jurisdiction today to decide that issue if you want to. And you also have discretion to duck the issue and wait and see what happens in State court, and I, you know, that's really all I can say. My position is because on this issue, the perceived-as issue, if we can shorthand it that way, is that in order to rule in your favor, we as a panel don't have to determine whether that sort of claim exists generally. Is that your argument? No. My argument is that this legal issue, it's simply, it's a narrow, very finite, distinct legal issue that I'm not this Ninth Circuit has never addressed. There's no authority for it one way or the other. Can a person ---- Your position is the opposite of what Judge Hopkins' question suggested, which is go ahead and decide that there is such a thing as a perceived-religious-discrimination claim under the Equal Protection Clause, send it back to the district court, and then if you lose in the California court of appeal, then the parties can brief the issue, preclusion issue, before the district court. Yes. More litigation on the very same claim. Well, it would be ---- Or you can give up on it at that point. Yes, I can. All I'm simply stating is, in my opinion, as a civil rights attorney, this is an important issue. Well, let me ask you another question, because what you're really suggesting is that we embrace determining a constitutional issue when, as I understand it, our jurisprudence would suggest to us that we decide an issue, any issue we can, prior to getting to the constitutional issue. Well, you're not ---- And if, in fact, the state of California is going to end this case anyway, why would it be that I would want to undertake a constitutional analysis, given what my jurisprudence ---- I mean, the Supreme Court has suggested, whether they were right or wrong, that we have the final authority as to what the Constitution says. Now, we can argue about that. But the bottom line is, one of the things we do to make sure that that analysis is not something we wave in everybody's face every day is that we don't address the constitutional issues until they're all that's left. And what we have in front of us, that's why I like my colleague's question, is we have one situation which would suggest, in effect, we don't need to get here. Your Honor, since I'm running out of time, and I do have two other very significant issues before the Court, I'll just submit that the Court should do whatever it feels is appropriate to do, and if you decide that you're going to, for whatever reason, not address the equal protection issue, that's fine. And I'll live with whatever happens in the State court. If I have a remedy in State court, fine, I'll live with it. If I don't, I don't. I feel confident about the claim in State court, but who knows what's going to happen. It's on appeal. But regardless of what happens in State court, I've got a Fourth Amendment issue here. Roberts. And I have a First Amendment retaliation issue here that I also think are very important. And the Fourth Amendment issue is also a case of first impression. Let me take you to that Fourth Amendment issue. Let's say we agree with you that the jury can infer that Jordan and Wendt actually disclosed the information. What's your best case for the proposition that Longmire, Mr. Longmire, has a right of privacy in the information? It relates to official misconduct, that he was going to be disciplined, and it doesn't seem to me to be highly personal information. So what cases are you relying on for that right of privacy? Copley. The Copley case, California Supreme Court, 2006 decision is its can't imagine a stronger statement by the California Supreme Court. And the issue in Copley, and it was brought by media outlets, was whether the public could be present during hearings before police commissions or in disciplinary matters, or should those be entirely kept private and confidential from the public. And the Copley court had to weigh the public's right to know versus the peace officer's right to privacy. And the California Supreme Court came down strongly in favor of a police officer's right to privacy. So, I mean, these, I don't know, and then the Copley, the California Supreme Court, and it's in my brief, relied on the California Constitution, Penal Code Section 832.7, Peace Officer Bill of Rights, and you can also throw in there Evidence Code Section 1043. But the Copley court made it very clear that when we have to balance the two, the And so you're going right exactly where I thought you would go. I guess I hope you finish off with telling me why California should be able to or can create a federal privacy interest. No, it can't, Your Honor. What I'm saying, my understanding of reading the few cases that are out there on the issue of a right to privacy, and there aren't many, the cases say, what is the expectation of privacy? What is the person's reasonable expectation of privacy? And the cases say, and all I can tell you is what I'm reading, the cases indicate that if a person, a police officer or not a police officer, has a reasonable expectation of privacy, that that can trigger a Fourth Amendment right. Now, the Ninth Circuit hasn't addressed this issue, and certainly this Court, if it chooses to, can disagree and say the Fourth Amendment does not include a right of privacy under these circumstances. But I think it would be helpful to everyone who's litigating these issues on behalf of peace officers and others to know, does this raise a constitutional right or not? Because there are cases out there. I'm not aware of any cases that say it doesn't. The few cases that are out there seem to indicate if there is a reasonable expectation of privacy, it can trigger a Fourth Amendment right. And so that's why I'm here, to hopefully have this Court decide that issue one way or another. At least it will help people like me who are representing police officers, for example, to know, should I stay out of Federal court with these issues and just go to State court for a remedy, or is there a constitutional remedy here? And Judge White seemed to think that the Orozco case, the Northern District case, he cited, he seemed to believe there was a constitutional right to privacy. He reasoned that Longmire had not proven that these two defendants were responsible. And it's true, we didn't have direct evidence, but we certainly had a lot of circumstantial evidence, and at page 18 of our opening brief, I summarized some very compelling circumstantial evidence that it was either Jordan or Wendt or the two of them that leaked this information to the press. Is it your position that there's a difference between a municipal police department saying, from this day forward, all information about internal investigations is public record, and if the public wants to know about it, they can come down and get a copy, as opposed to maintaining an aura of it being private and leaking it to the press? Well, it would be illegal under California law, under statute, constitution, and the Copley decision. So the Copley decision stands for the proposition that departments don't have that discretion. They simply don't. And, I mean, I've been on the side of suing police officers many times, and I've been on the side of wanting to get personnel information against police officers and many times, and I've argued both sides of this issue, and I'm very familiar with the issue. All I'm saying, here I am today representing a police officer, and this issue has been decided decisively by the California Supreme Court. Now, the issue before this Court is, well, does that raise the level of a constitutional right? And that's for you to decide. You may want to then move to your First Amendment retaliation. Thank you. Because I you told me when I was prolonging your idea on equal protection that you had two more important issues you wanted to talk about, so I'm going to move you. Thank you. I appreciate it. And I appreciate the Court's indulging me. I think the Dahlia decision was, if not directly on point, it was certainly helpful and I'm sure this Court is familiar with the reason to unblock decision in Dahlia that I brought to the Court's attention. I certainly think it makes clear that under certain circumstances, including the circumstances in this case, an extended administrative leave, even if it's a paid administrative leave, can constitute an Adverse Employment Act. And so in terms of do we have, is there an Adverse Employment Act here, if you look at what the Court in Dahlia said could constitute an Adverse Employment Act under the First Amendment to chill one's speech and the number of things that happened to Sergeant Longmire here, including that having his administrative leave, he should have returned to work no later than August 23rd if department policies had been followed. And yet, and he should have been notified under department policies within 30 days of the Skelly hearing result was that he was cleared. He wasn't told that. He was left in the dark and instead of coming back to work and being told that he'd been cleared, he was left with the impression that it hadn't been decided yet, that he hadn't been cleared. And I discovered something today that I wish I'd put in the brief, but it's in the negotiating with Sergeant Longmire without telling him he'd been cleared and now they're trying to get a release from him, which in my mind is just incredibly outrageous conduct. They're keeping him in the dark. They know they've screwed up because they got the letter from Mike Rains that just details all the ways that they violated many of his rights and a lot of his due process rights, grady violations. I mean, just a laundry list of things that were done incorrectly to get, try to get him fired. They sent him a release and this is an ER-336 and it's the first page of the release. And it says in the first paragraph down, they're asking him to release him from the two internal affairs complaints, the Bailey complaint, which they say we're asking for a release on that. They don't tell him, oh, by the way, you've been cleared. No, what they're saying is, you know, we'll, if you'll agree to take a five-day suspension for these other charges, we'll, we'll rescind that for you. In other words, we're doing you a big favor if you'll sign a release. Well, what is, it seems to me if you draw inferences in Sergeant Longmire's favor, they knew from the Raines letter that this was, in addition to many things, it was certainly could be interpreted as a complaint of numerous due process violations. That are a matter of public concern and I brief that and I, I think it's, I think it's kind of hard, hard to argue under these circumstances that he's, this is speech as a private person. It's not within his job description to respond to allegations where he's trying to be terminated and he raises all these due process violations. Is there any evidence that Jordan saw the letter regarding the due process violations? There's no direct evidence. But there, there is evidence that he discussed it with both Captain Toribio, the skelly hearing officer, and with Sean Wendt. So he, he had conversations with them and if you draw inferences in our favor, although his testimony was, I haven't read the letter, we all know as attorneys, we can, if there's a document we don't want our client to see because the client might be asked, did you ever see this document? We can have a conversation with the client, tell the client what the document says and if the client gets asked at a deposition, have you ever seen this letter? The client can honestly say no. But does the person know the content of the letter? It's incredulous to me that Jordan could not know the content of the letter and that there were complaints. It's a reasonable inference in Sergeant Longmire's favor that given the high-profile effectiveness of this case, together with the fact that this letter was enough to have a skelly hearing officer say there's not enough here, that the inference is that, and Jordan, even without knowing the letter, knew what was in it because he knew that all these due process violations that occurred, and then what is the inference from the fact he wants a release? Why do they want a release? It just doesn't make any sense. What is the rationale for asking for a release if you don't think you did something wrong? And how do you know you did something wrong? Because it was laid out in the letter from Mr. Raines. Now, whether you got that information from talking to the city attorney, the city manager, Captain Cherebio, Sean Wentz, or whether, let me posit this, if a witness is false in one part of their testimony, they can be distrusted in all others. And in front of a jury, I'm going to say to a jury, why believe anything this man says? Just because he said he didn't read the letter doesn't mean he didn't. And we can draw inferences and it goes to an issue of credibility. So what the district court did in this case is drew inferences in favor of the city and Jordan and basically took an issue of weighing the evidence and credibility away from the jury and decided those issues here. So I would submit on that basis there is certainly significant evidence from which it could be inferred that if either Jordan read the letter or if he didn't read it, he certainly knew the contents of it. And enough of the contents of it to know that, whoa, Mike Raines and Longmire are on to me. They know I screwed up in this case. They know that I was participating in an investigation to have him falsely accused of compromising a high-profile investigation. I leaked it to the press. Mike Raines got it, did some investigation. I got caught with my pants down, and now I want to release. And that's in kind of layperson jargon the way I would argue it to a jury. I understand your argument. Your time is up. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court, my name is Christine Maloney. I represent Appellees City of Oakland, Howard Jordan, and Sean Wendt. I'd like to first address the perceived-as claim, as it's been called, and argue that this Court should not find perceived religion is a suspect or quasi-suspect classification under the Equal Protection Clause for the first reason that Your Honors have already identified, which is it is not the Court's business to decide interesting and abstract matters of law when there is not a current controversy present. We are facing a situation where the potential for mootness of this claim is very possible. We have one summary judgment on this issue on the full merits, and that is now pending before the California Court of Appeal. Were you aware of the motion for summary judgment being granted? Are you the same counsel on the state litigation as well? I'm just wondering why it took defendants so long to notify us of that ruling. So the briefing in this case was complete when summary judgment was entered. Summary judgment was entered in or about October, November of 2012. At that time, I was involved in both cases. I researched the issue of mootness, and my research indicated that a matter is not moot until it is final. And plaintiff's or appellant's counsel had appealed, and so my determination was I didn't have a mootness argument yet, and that I would wait and see the state court action play out, which this case was then noted for oral argument before that finished playing out. So I reexamined the mootness argument. I didn't want to appear before you today and surprise you with a state court action. So I came up with a document called Notice of Potential Mootness, for which there is no playbook. That's a fair response. So what are you asking us to do? Defer ruling on the perceived religious discrimination claim? Because we've got these other claims to resolve as well, the Fourth and First Amendment retaliation claims. Yes. I think under the doctrine of mootness and the controversy requirement, that the court should stay deciding the issue of the perceived as claim. This is a significant constitutional issue of first impression. Appellant is urging you to decide this issue in the abstract based on what I believe are very bad facts. In this case, we do not have an individual who was allegedly discriminated against because he was perceived to adhere to the tenets of a religion. There's no allegations in this complaint that Derwin Longmire followed the five canons of Islam. That nobody made fun of him for engaging in ritualistic prayer or making a pilgrimage to Mecca. There's no evidence that he was ever subject to ridicule or discrimination for religious observances or what were perceived as. What this case is about is that Derwin Longmire was perceived to be friends with a murderer whom he was investigating. That's what this case is about. It's not about whether or not he had particular religious beliefs. It's about what was his relationship with Yusuf Bey IV. And how did that impact his murder investigation of Chauncey Bailey's murder? One or more of his superiors perceived him to be a black Muslim, correct? The plaintiff submitted a. The answer to that question is yes, isn't it? With respect to Howard Jordan, who that claim is attributed to, I would argue the answer is no. And I would refer you to the full quote from Chief Jordan's interview with the investigator. Plaintiff quotes this part. At the time of the Chauncey Bailey murder, did you believe that Sergeant Longmire was associated with the black Muslim religion? Yes. That's where he ends it. You have to consider the context of the rest of the statement. Question. Why? Why? I had spoken to Andre Rochelle, who is our intelligence officer. He was our subject matter expert on the bakery. I had spoken to Jeff Lowman in the past about Appellant Longmire's association. Question. And what did you understand that all to mean, that he is friends with them? Well, did you perceive that he had some sort of special relationship here? I was not aware of that. So if you look at the context of that statement, the plaintiff or appellant has taken it completely out of context. All Chief Jordan assumed was that Appellant Longmire was friends with members of your black Muslim bakery, not affiliated with that religion. So I submit that this is not the case. It sounds like a fact question that ought to be resolved by a jury. Well, it's actually been resolved by the State court on summary judgment that there were not genuine issues of material fact supporting a perceived-as claim under the California Fair Employment and Housing Act. So that issue has been fully vetted, tried on the merits, and resolved, and we're awaiting a finality decision from the court of appeal. I thought that was summary judgment. Yes. You know, I'm just an old trial lawyer. Tried on the merits means you get in front of a jury or you have a bench trial, and there are final conclusions either through a jury verdict or findings of fact, conclusions of law by a judge. That's not tried on the merits. A summary judgment? A summary judgment, I believe, does examine the merits of the evidence. And while the court does not ---- And there has to be a conclusion that there are no material questions of fact. And you've just told me that in one sentence the ---- was that the chief? The chief. The statement, yes. The chief said, yes, I thought he was associated with the black Muslims. And then in another sentence he says, by that, oh, by that, I meant that he was friends with them. So those were kind of hard to reconcile. But it's all part of the same conversation. And the plaintiff is asking you to look at it antiseptically, and that's not actually how dialogue occurs. Well, here's what I mean by that. It's imprecise language, and he explained what he meant by that. He did not explain when asked why. Well, it's because I, you know, perceived that he was taking five prayer breaks a day or that he was observing Ramadan or anything like that. It was that he was friends. So in Arizona we had a member of the Sikh faith murdered the day after 9-11 because the murderer thought that this guy with a turban and a beard was a Muslim, when in fact he was a Sikh. But the guy that pulled the trigger thought he was killing a Muslim. So, you know, and he was not examining whether they faced to the east and prayed on a prayer mat or took five breaks a day or answered evening prayer. All of those are factual questions, right? You can argue that intent is ultimately a factual question, but if there aren't sufficient facts to demonstrate a genuine issue as to intent, summary judgment can be granted and, we argue, was properly granted by the State court. I understand your argument. Okay. While a jury could have inferred that Jordan and Wendt disclosed the relevant letters and information to the press, did Longmire have a legitimate expectation of privacy in those letters? Well, whether — I argue that Longmire did not have a reasonable expectation of privacy in those letters for the reason that you have to examine the sequence of events here. On April 13th, 2009 — let me see if I get that date right — 2009. That's correct, as I remember.  As I have in my notes. Sergeant Longmire is notified that the investigation is complete, that findings are sustained against him, and that he is being placed on paid administrative leave. He is not informed yet of any disciplinary recommendation. That comes substantially later. On the 14th, his attorney, Mike Raines, gives a television interview to KTVU Television where he informs KTVU that his client has been placed on paid administrative leave related to his conduct in the Chauncey Bailey murder investigation. Before the newspaper articles which the appellant claims to have grieved by even appeared, his attorney had gone to the press and disclosed these facts. Under those circumstances, the appellant cannot have a reasonable expectation of privacy or a legitimate expectation of privacy. I think your argument is, or if he had one, that waived it. Or if he had one, that waived it. It's our position that this claim was very specifically brought by appellant under the Fourth Amendment. The Fourth Amendment, our cases say, is not a general constitutional privacy guarantee. It is specific to search and seizure by the government. Certainly, reasonable expectations of privacy play into that when we're talking about searches of employees' lockers and desks and computers and what they have an expectation of. But there must be a search or seizure. And a disclosure of information does not qualify as a Fourth Amendment violation. We see that informational disclosure violations are typically construed as arising under the Due Process Clause of the Fourteenth Amendment. There is no such claim in this case. So I don't think the plaintiff is entitled to any relief on an informational privacy claim, even if Your Honors believed that there was sufficient evidence to get to a jury as to who leaked the information, if anyone did, other than Mike Bates. Kennedy, which was the question. Yes. Why don't you turn, then, to the First Amendment retaliation claim? Okay. I mean, I'm trying, because your time is short, to hit the high points of what counsel has really talked to us about. This Court should affirm dismissal of the First Amendment claim on the grounds that the First Amendment does not constitutionalize the employee grievance. That's what we have here. The protected the alleged protected speech was a Skelly response, or a Loudermill response, if you will, if you're not a Californian. Skelly and Loudermill afford due process rights to public employees, pre-termination meeting to as a check against a mistaken decision. It's the employee's opportunity to tell the employer all the reasons the proposed action should not be taken. That due process right was afforded to the plaintiff through a letter and through a personal meeting. He articulated all the reasons he thought the proposed discipline was inappropriate. The Skelly process worked exactly as it should in the situation. The Skelly officer looked at the evidence, made a recommendation that there was not sufficient evidence to sustain the allegations, and that termination was not the appropriate action. Chief Jordan reconsidered and rescinded his recommendation for termination. Now, appellant has told you that when the Skelly happened, the claimant was cleared of the allegations involving the Chauncey Bailey murder investigation. That's not what the plaintiff said. Kennedy, I kept asking, what's the rationale of the release? Well, but I will address that if I could just finish my thought on that. I understand. I'm just trying to get you there. Okay. Being not sustained in police vernacular is very different from being exonerated. The plaintiff was not exonerated. He was not sustained, which means there was insufficient evidence. At that point, the evidence in the record reflects that Chief Jordan had not decided whether no discipline would be imposed. He only decided to withdraw the termination recommendation. With regard to the release, this was an offer of compromise. It is protected as such under the rules of evidence, and it should not be considered for public policy reasons as evidence of an admission of guilt or liability. In this situation, you had, judging by Mike Rains' 109-page Skelly response, a very serious dispute about whether discipline and termination was warranted. In that 109-page Skelly response, Mike Rains threatens legal action. The settlement discussions occurred after that point in time. That is the very policy that the Federal Rules of Evidence on Offers to Compromise protects. So that should not be considered as evidence of guilt at all. The reality is that with police officer discipline, the due process both pre- and post-trial is so extreme that the litigation often goes on for a year, to a civil service hearing, with full attorney representation on both sides, and then has to be judicially exhausted to a State court if the losing party is unsatisfied. These are very expensive proceedings. And an offer to compromise ---- Kagan. If the matter were to go to trial and the trial judge disagreed with you as to whether that evidence can be used to demonstrate retaliation, I think that's what counsel is going to be relying on to say, look, there were numerous due process violations that occurred during the Skelly hearing process. Those violations were brought to the Chief's attention. I know there's a dispute as to whether he was aware of it or not, but the jury is going to sort that out. And instead of notifying Mr. Longmire of the result, the Chief extended it so that he can negotiate a release, and extended the placement of Mr. Longmire on administrative leave. I think that's the retaliation evidence or part of the retaliation evidence that he's relying on. And I would suggest that the evidence in the record of that policy is insufficient. There is no plaintiff or appellant has not produced any written policy of the Oakland Police Department that once an employee has findings of an investigation that are not sustained, that he or she is ordered back to work in 30 days. That's not what department policy provides, and there's been no competent evidence that that is the case. There's been general assertions of that, but where is this policy? In this particular case, the evidence in the record shows that while the Chauncey Bailey discipline was working its way through the course, Sergeant Longmire became under investigation for a second set of misconduct allegations or malfeasance allegations involving ten other open homicide investigations for which he had not done the basic DNA and fingerprint analysis. And even though Chief Jordan had decided not to sustain the allegations in proposed termination, he still had to fashion an appropriate remedy for Bailey and an appropriate remedy for the Medeiros investigation, and he testified in his declaration that he kept Longmire on paid administrative leave rather than return him to work and send him back out for a suspension which had been proposed on the Medeiros investigation. That's his legitimate business reason, and the plaintiff has not suggested that that is a pretext for retaliation. There is no evidence that Chief Jordan was ever upset by anything Mike Raines put in the Skelly letter. I will bet you that Chief Jordan saw dozens upon dozens upon dozens of such letters written on a routine basis by Mike Raines' OPD officers. To suggest that a Skelly response becomes a matter of constitutional dimension is going to constitutionalize the employee grievance, and that is not what our First Amendment jurisprudence provides. Any other questions? No. No. Okay. Then I am prepared to rest on my briefs and evidence. Thank you. Thank you. All right. Because we gave you all of your time the first time and because she's quitting early, I think we'll just submit the case. Okay. I'll give you a minute. I've got some time here. I'm trying to be fair. Not my normal approach, but we'll give you a minute. This just facts. Better be reply. It's 100 percent. All right. We filed a motion to supplement the record with some testimony of Deputy Chief Jeffrey Israel that was inadvertently left out of the record. And quote his testimony. He was a deputy chief, and this is at page 72 of his deposition, and it's attached to our motion to supplement the record. He was asked, based on your training and experience with the department, when is an officer notified of the outcome of the Skelly hearing? Answer. It would be after the chief has reviewed the recommendation of the Skelly officer, and it's either policy or law. Of course. So to be fair, having those two pages in there, I've really got to say that you can or that I'm going to grant your motion in order to even look at that. Right?  Isn't that right? I'm sorry, Your Honor. Answer my question. Before I can even look at the two pages of the Deputy Chief Jeffrey Israel's deposition, I've got to grant your motion to supplement the record. Absolutely. You do. And in order to do that, I've got to meet three criteria? Yes. All right. Then I think that's all you need to say. I've got to think about that before I let you get into that. One other thing, if I may, Your Honor, is just some deposition testimony of Chief Jordan. In addition to the interview where he was being interviewed by the Department of Justice as a witness to the Chauncey Bailey investigation, he gave testimony, and it's at ER 493. And what is the reality of what he said? What do you want me to get out of it rather than reading it to me? Okay. Tell me what you want me to get out of it. Because I've already given you more than I expected. Your Honor, thank you for indulging me. I appreciate it. I'm just an advocate. I understand that, and all I'm trying to do is be fair to both. Appreciate it. You had to quit early, and now you're trying to go over. He was asked at his deposition if he believed Sergeant Longmire was associated with a black Muslim religion. And the answer was yes. All right. Thank you. Then Case 11-17870, Longmire v. The City of Oakland, is submitted.
judges: Hawkins, Smith, Nguyen